## JOE W. RUFFNER v. ROY E. McKENZIE.

Eastern Section. November 1, 1930.

Petition for Certiorari denied by Supreme Court, April 5, 1931.

Whitaker & Whitaker, of Chattanooga, and O. T. Tindell, of Kingston, for appellant.

Noone & Ziegler, and W. T. Murray, of Chattanooga, for appellee.

### I.

PORTRUM, J. This is a suit on a promissory note payable to the complainants and endorsed by the defendant and the maker is not a party to this suit. The sum payable in figures is $3,000 but the writing is for the sum of $2,000.

The defenses are three, namely, (a) a failure of consideration for the note; the note is said to represent profits and there were no

profits; (b) a failure of consideration for the endorsement; it is claimed the note was executed and delivered before a contract was entered into with an endorser; (c) the sum payable was $2,000 as written, and not $3,000, as appears in figures.

The chancellor gave judgment for the sum of $2,000 together with an attorney fee, and the complainant and the defendant have appealed to this Court, assigning error.

## II.

Is the sum payable $3,000 or $2,000? The Negotiable Instrument Act provides:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply:

"Where the sum payable is expressed in words and also in figures, and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount:" Acts 1899, Chapter 94, Section 17; Shannon's Code, Section 3516a25.

The complainant insists that where it is shown the intention of the maker and the payee was that the sum payable should be $3,000, and not as written, $2,000, then the rule of construction which gives force to the intention of the parties should control. To apply this rule of construction, in the face of the statute, is in effect a repeal of the statute. The rule of intention applied before the enactment of the statute and its purpose was to abrogate this rule. The rule of the statute and the rule of intention are inconsistent rules and both cannot be applied nor harmonized. Should the rule of intention control, then the question in the case is: what was the intention? There will be no room for the arbitrary statutory mandate. For this reason parol evidence is not competent to change and modify or vary the written amount payable. Bell v. Binn (Ala.), 60 So., 971.

To meet this situation at the hearing, the complainant moved to be allowed to file an amended bill seeking a reformation of the written instrument. This was denied because the application came too late, and was without equity. The chancellor's action was assigned as error.

We will here examine the equities of the defendant and complainant. The defendant is an accommodation endorser, who signed the note without inspecting it, and was unaware of the ambiguity appearing upon its face. He was not a party to the original agreement and did not know that the parties intended to execute a note for $3,000. Therefore, a reformation would establish a contract the endorser had not agreed to fulfill. However, it is said the endorser was negligent in not inspecting the note and discovering the

ambiguity, and his negligence estopped him from raising the question of a new contract. For this reason he could be held liable for the contract as intended to be made and not as it was made, notwithstanding that he was not aware of the intention of the parties. The complainants accepted the note after its endorsement, as they insist, and did not discover the ambiguity themselves, and they were negligent in not seeking a reformation of the instrument until the hearing. The endorser owed the payees no duty to look out for their interests and to guard them against their own negligence. The payees had had an opportunity to inspect the note before and after its endorsement, and the law places a greater duty upon an interested person to protect his interests than upon a stranger to protect his interests for him.

There was no obligation upon this endorser to see that the written instrument conformed to the original agreement, and since he did not know of the ambiguity he cannot he held liable for any negligence in not discovering the ambiguity and making it known to the payees. The equities are clearly with the defendant, and an amended bill would have served no purpose had it been allowed to be filed. There was no error in disallowing same.

## III.

The defendant says Bascom Waters, the maker of the note, and the complainants entered into an agreement to take $4000 of their money to Florida and invest it in real estate for speculative purposes and to divide the profits realized. His services were to offset the complainants' financial adventure. The money was advanced and so invested and, at a later date, when the Florida real estate boom was in full blast, the defendant made a proposition to the complainants to purchase their interests by repaying the $4,000 and to divide the profits, which were estimated at $6000. This agreement was accepted by the complainants, and Bascom Waters executed two notes for $2,000 each, which represented the original investment, and one note for $3,000 in figures and in writing for $2,000, which is the subject of this suit. He had purchased the equity in the real estate in Florida, that is, he purchased property which was covered by a first mortgage. He held this property until the bubble burst, and the property was foreclosed under the first mortgage. He now says there there were no profits, and the note given for the profits was without consideration.

At the time the defendant made the settlement with the complainants, there was an equity in the real estate, and by the settlement he became the sole owner of the equity at an appraised value. Had the property advanced in price, he would have been under no obligation to account to the complainants for the increase in

value, and we see no reason why the complainants should be made to account to the defendant for the decrease in value. No attempt is made in this record to show that the appraisal was out of line with current and prevailing prices. The defendant contents himself by showing in the end he lost all. The fact that the defendant's property in the end was worth nothing does not establish the fact it was worth nothing at the date he purchased it. Had the defendant shown clearly that at the date he purchased this property from the complainants it was worth only $4,000 and that the contemplated profits were fictitious, then the Court would have lent an ear to his entreaty. But he has made no attempted to do this and is without a remedy.

## IV.

Was the endorsement upon the note made after the transaction had been closed and without consideration?

This involves a question of fact. The chancellor held that it was within the contemplation of the parties that the endorser would be procured before the transaction was closed, and held that there was a valid and legal and existing consideration at the time of the endorsement. In reference to the testimony of the only two persons who were in a position to know the facts, the chancellor said:

"Upon the question that is determinative of the cause, the deposition of James W. Ruffner, is clear, positive and probable, while the deposition of Waters is hesitant, lacking in positiveness, somewhat inconsistent in itself, and quite at variance with the affidavits he gave in September."

There is no escape from this conclusion of the chancellor, and we are content to concur in his finding of facts upon this issue.

There is no error in the decree of the chancellor, and it is affirmed. The complainants are entitled to a judgment of $2000, with interest and attorney fees, which will be fixed upon the remand to carry out the order of reference made in the lower court, unless the parties can agree upon an amount in this Court. The costs of the appeal will be taxed one-half against the complainants and other against the defendant.

Snodgrass and Thompson, JJ., concur.